**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JULIE KIMBALL, on behalf of herself and all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 22-cv-4163 |
| v. | **OPINION & ORDER** |
| VOLKSWAGEN GROUP OF AMERICA, INC., *et al.*, | |
| *Defendants*. | |

**John Michael Vazquez, U.S.D.J.**

In this putative class action, Plaintiff alleges that Defendants knew that a component of their motor vehicles would eventually fail but did not disclose this defect to consumers. Presently before the Court is a motion to dismiss the Complaint filed by Defendant Volkswagen Group of America, Inc ("VWGoA").[1] D.E. 20. Plaintiff filed a brief in opposition, D.E. 23, to which Defendant replied, D.E. 25. The Court reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

---

[1] Plaintiff also asserts claims against Defendants Audi of America, Inc. ("Audi America"), Volkswagen Aktiengesellschaft ("VWAG"), and Audi Aktiengesellschaft ("Audi AG"). Compl. ¶¶ 4-6. It does not appear that Volkswagen Aktiengesellschaft, and Audi Aktiengesellschaft have been served. In addition, although Plaintiff indicates that she served Audi America, D.E. 8, VWGoA states that Audi America "is a trade name and operating unit of VWGoA and has no independent corporate existence." Def. Br. at 1 n.1.

[2] The Court refers to Defendant's brief in support of its motion (D.E. 20-1) as "Def. Br."; Plaintiff's opposition brief (D.E. 23) as "Plf. Opp."; and Defendant's reply (D.E. 25) as "Def. Reply."

I.       **FACTUAL BACKGROUND[3] & PROCEDURAL HISTORY**

In 2009, Plaintiff leased a 2010 Audi A4 from an authorized Audi dealership. At the end of the lease, Plaintiff bought the car. Compl. ¶ 2. In 2019, with more than 63,000 miles on the vehicle, Plaintiff's vehicle "experienced the turbocharger defect." *Id.* Plaintiff alleges that she was forced to pay approximately $3,000 for diagnosis and replacement of the turbocharger. *Id.* Plaintiff claims that the turbocharger defect is present in other Audi and Volkswagen ("VW") vehicles and seeks to assert claims on behalf of individuals that purchased these vehicles. *Id.* ¶¶ 12, 112-27.

The class vehicles[4] have engines that employ an exhaust-gas turbocharger with a vacuum operated internal wastegate. The turbocharger increases torque and horsepower for the engine. *Id.* ¶ 16. Plaintiff alleges that components of the turbocharger produce "pulsations and vibrations" that cause premature wear on the turbocharger. *Id.* ¶¶ 18-19. These pulsations may also "cause the roll pin on the turbocharger housing to back out allowing the wastegate valve and lever to drop into the housing." *Id.* ¶ 18. Plaintiff further asserts that when either condition occurs, overboost or underboost results, which causes the wastegate to become nonfunctional. *Id.* ¶ 19. At this point, the turbocharger must be replaced. Plaintiff maintains that this occurs "shortly after the limited powertrain warranty expires." *Id.* ¶ 19. Defendants provide a Powertrain limited warranty that

---

[3] The factual background is taken from Plaintiff's Complaint. D.E. 1. When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[4] The class vehicles include the VW Beetle model years 2012-2014, VW CC model years 2009-2012, VW Eos model years 2009-2012, VW GTI model years 2008-2012, VW Jetta model years 2008-2014, VW Passat model years 2008-2010, VW Tiguan model years 2009-2014, Audi A3 model years 2008-2012, Audi A4 model years 2009-2013, Audi A5 model years 2009-2013, 2012 Audi A6, Audi TT model years 2009-2012, and Audi Q5 model years 2011-2012. Compl. ¶ 12.

covers "all internal [engine] parts" for "5 years or 60,000 miles whichever occurs first."[5] Compl. ¶ 31. Although Plaintiff alleges that her vehicle experienced the turbocharger defect, Plaintiff fails to allege any details about the precise diagnosis or cause of the defect.

Plaintiff states that Defendants knew of and concealed the turbocharger defect and the related safety risk from her and class members. *Id.* ¶ 20. Plaintiff broadly alleges that Defendants knew of the defect through "pre-production testing, pre-production design failure mode analysis, production design failure mode analysis," consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), and warranty and replacement parts data. *Id.* Plaintiff also claims that Defendants acknowledged the defect in Technical Service Bulletins, other service bulletins, and tech tips beginning in July 2010. These bulletins address, among other things, the roll pin issue and turbocharger rattle. *Id.* ¶¶ 22-25.

Plaintiff filed her Complaint on July 21, 2022. Defendant Audi America is allegedly involved in the advertising, marketing, and sale of Audi automobiles nationwide. *Id.* ¶ 6. Plaintiff pleads that Audi America is a wholly owned subsidiary of Defendant Audi AG. *Id.* Audi AG designs, develops, manufacturers, and sells automobiles under the Audi brand name and is a wholly owned subsidiary of Defendant VWAG. *Id.* ¶ 5. VWAG is an automobile manufacturer. *Id.* ¶ 4. Finally, Defendant VWGoA is also a wholly owned subsidiary of VWAG that "engages

---

[5] Defendants also provide a New Vehicle Limited Warranty ("NVLW") for "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first or 4 years or 50,000 miles, whichever occurs first." Compl. ¶ 31 (internal quotation marks omitted). While not pled in the Complaint, Audi also extended the Emissions Control Systems Warranty for specific turbocharger conditions in certain vehicles, including Plaintiff's vehicle, to 7 years or 70,000 miles, whichever comes first. *See* Pritzl Decl. ¶ 5, Ex. B. Defendant maintains that the Court can take judicial notice of the warranty extension because it was filed with the National Highway Traffic Safety Administration ("NHTSA"). Def. Br. at 2 n.2. Plaintiff contends that the warranty extension does not cover the defect alleged in the Complaint. Plf. Opp. at 2 n.4. Defendant does not appear to disagree. Accordingly, the Court does not decide whether it may consider the warranty extension.

3

in business activities in furtherance of the interests of VWAG, including the advertising, marketing and sale of VW automobiles nationwide." *Id.* ¶ 3. Despite these different roles, Plaintiff's allegations pertain to Defendants collectively, and Plaintiff asserts her claims against Defendants as a whole. Plaintiff's claims include the following: violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* (Count I); violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count II); violation of the Song-Beverly Consumers Warranty Act ("Song-Beverly"), Cal. Civ. Code § 1791 *et seq.* (Count III); fraud by omission or fraudulent concealment (Count VI); negligent misrepresentation (Count V); breach of express warranty under the California Uniform Commercial Code ("UCC") (Count VI); and breach of implied warranty under the UCC (Count VII). Plaintiff asserts her claims on behalf of herself and a California class.[6]

On September 15, 2022, Defendant VWGoA filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 20.

## II.    LEGAL STANDARD

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[6] In Counts IV through VII, Plaintiff asserts claims, in the alternative, on behalf of a nationwide class. Defendant seeks to dismiss Plaintiff's nationwide class allegations for lack of standing. Def. Br. at 36. Plaintiff does not presently oppose the dismissal of her nationwide class allegations. D.E. 24. As a result, Plaintiff's nationwide class claims are dismissed, and the Court considers Counts IV through VII as asserted on behalf of Plaintiff and a putative California class.

4

*Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Thus, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III. ANALYSIS

#### 1. Fraud Claims (Counts I, II, and IV)

Count One asserts a claim under the CLRA, Count Two alleges that Defendants violated the UCL, and Count Four claims fraud by omission, or a fraudulent concealment claim. Defendant seeks to dismiss all three fraud-based claims.

##### a. Affirmative Misrepresentations

Defendant first argues that to the extent Plaintiff's CLRA and UCL claims are premised on affirmative misrepresentations, Plaintiff fails to plead reliance. Def. Br. at 23-26. To plead reliance under either statute, a plaintiff must establish that the misrepresentation "was a substantial factor in [her] decision making process." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017).[7] Here, Plaintiff alleges that Defendants made misrepresentations in the owner's manual as well as the warranty and maintenance pamphlets as to the "useful life expectancy of class vehicles without a major engine failure." Compl. ¶¶ 58-59. Even assuming this to be true, Plaintiff fails to allege that she viewed the documents prior to her purchase or that the alleged misrepresentations in these documents were a substantial factor in her decision to purchase her class vehicle. Without such allegations, Plaintiff does not plead reliance. Plaintiff,

---

[7] Defendant maintains that because Plaintiff resides and purchased her vehicle in California, California substantive law applies to her claims. Def. Br. at 3 n.3. Plaintiff appears to agree because she cites to California law throughout her opposition brief. Seeing no clear reason to deviate from this assumption, the Court applies California law to decide Defendant's motion. *See Cole v. NIBOC, Inc.*, No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015) (explaining that because "Defendant suggests, and Plaintiffs do not dispute" which state law applies, "the Court will follow the lead of the parties and will not engage in a choice of law analysis"); *Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

6

therefore, does not sufficiently state a CLRA or UCL claim based on an affirmative misrepresentation.

### b. Omission Based Claims

Defendant argues that Plaintiff's omission-based fraud claims fail because Plaintiff does not plead pre-sale knowledge. Def. Br. at 28-32. In failure to disclose a defect claims under the CLRA or the UCL, a plaintiff must allege "'(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; and (3) a causal connection between the alleged defect and the alleged safety hazard; and that the manufacturer knew of the defect at the time a sale was made.'" *Azoulai v. BMW of N. Am. LLC*, No. 16-589, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (quoting *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017)). A plaintiff must also plead knowledge of the defect at the time of sale to establish a common-law fraudulent concealment claim. *See Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1092 (S.D. Cal. 2016) ("A defendant may be obliged to disclose a fact when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff or when the defendant actively conceals a material fact from the plaintiffs." (internal quotation omitted)). Here, Plaintiff alleges that technical bulletins, service bulletins, and tech tips "irrefutably demonstrate that Defendants knew of the turbocharger defect" prior to Plaintiff's purchase. Plf. Opp. at 34-36.

Defendant maintains that Plaintiff must establish pre-sale knowledge before December 2009, which is the date Plaintiff initially leased the vehicle. Def. Br. at 28-32; Compl. ¶ 2. Plaintiff counters that Defendants' knowledge before she purchased the vehicle on December 29, 2012 is critical. Plf. Opp. at 34-35. But Plaintiff does not allege her purchase date in the Complaint or

even the length of her lease.  Plaintiff merely pleads that "[a]t the expiration of her lease, Plaintiff Kimball purchased the [vehicle]."  Compl. ¶ 2.

In her opposition brief, however, Plaintiff states that she had a three-year lease and that she purchased the vehicle on December 31, 2012.  Plf. Opp. at 1.  Plaintiff also attaches a copy of the lease and purchase agreements as exhibits to her opposition brief.  Sobran Decl., Exs. A, B. Plaintiff asserts that the Court can consider these documents because she referred to her lease and purchase in the Complaint and they are central to Plaintiff's claims.  Plf. Opp. at 1 nn. 1-2.  The Court disagrees.  At the outset, Plaintiff cannot amend her Complaint through a brief.  *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)).  Moreover, in deciding a motion to dismiss, a court ordinarily considers only the factual allegations, exhibits attached to the complaint, and matters of public record.  A court may also rely on "a document *integral to or explicitly relied* upon in the complaint."  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis in original) (citation omitted).  A document is integral if a "claim would not exist but-for the existence of the document." *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011).  Plaintiff does not refer to the purchase or lease agreements in the Complaint.  In addition, neither document is integral to Plaintiff's claims.  In other words, Plaintiff can plead her fraud and warranty claims without referencing either agreement.  The Court, therefore, will not consider the purchase or lease agreements to decide Defendant's motion to dismiss.  Without the purchase agreement, the lease agreement, or an allegation in the Complaint as to the date of purchase, the Court cannot ascertain Defendant's pre-sale knowledge.  And absent allegations as to the date of Plaintiff's purchase, Plaintiff's omission-

8

based fraud claims fail because the Court cannot determine whether Defendants had pre-sale knowledge of the purported defect.[8] Consequently, Plaintiff also fails to state a fraudulent concealment or omission-based fraud claim.

In sum, Plaintiff's fraud-based claims are dismissed pursuant to Rule 12(b)(6).[9]

### 2. Express Warranty Claims (Counts III and VI)

Plaintiff asserts breach of express warranty claims in Counts III and VI, under the Song-Beverly Act and the UCC, respectively. In both claims, Plaintiff alleges that the vehicles were inherently defective because of the turbocharger defect. *See, e.g.*, Compl. ¶¶ 212-14. Defendant maintains that Plaintiff's express warranty claims must be dismissed because the defect manifested outside of the warranty period. Def. Br. at 12-13.

"The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Cal. Ct. App. 2006)). This is also true for a latent defect that did not manifest during the useful life of a product. *Daugherty*, 51 Cal. Rptr. 3d at 122-23; *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 534 (C.D. Cal. 2012) ("Thus, under California law, a defect that remains 'latent' during the useful life of the product and does not manifest in an actual malfunction will not support a cause of action for breach of express warranty."). In addition, for a breach of express warranty under the Song-Beverly Act, a plaintiff must establish that the vehicle had a

---

[8] In addition, the date of the lease, December 2009, pre-dates the bulletins cited in the Complaint. *See* Compl. ¶ 22 (pleading that the Defendants acknowledged the turbocharger defect in Technical Bulletins beginning in or around July 1, 2010).

[9] Because Counts I and II are dismissed on the merits, the Court need not address Defendant's argument as to equitable relief.

9

nonconformity covered by the express warranty that substantially impaired the use, value, or safety of the vehicle. Cal. Civ. Code § 1793.2.

Two warranties are at issue: (1) the NVLW that includes coverage for 3 years or 36,000 miles, whichever came first, or 4 years or 50,000 miles, whichever came first; and (2) a powertrain limited warranty for 5 years or 60,000 miles, whichever came first. Compl. ¶ 31. Plaintiff discovered the alleged turbocharger defect at 63,683 miles, and approximately ten years after she leased the vehicle. *Id.* ¶ 2. Accordingly, Plaintiff's alleged defect occurred outside any applicable express warranty period.

Plaintiff counters that she only needs to plead "a substantial certainty of premature failure, not . . . an actual malfunction during the warranty period." *Hewlett-Packard Co. v. Super. Ct.*, 83 Cal. Rptr. 3d 836, 842 (Cal. Ct. App. 2008). But Plaintiff fails to plead any plausible facts demonstrating that turbochargers were substantially certain to fail. Plaintiff also argues that it would have been futile to present her car for repair during the warranty period because Defendants concealed the turbocharger defect and failed to provide a suitable repair or replacement. Plf. Opp. at 14-15. "[F]utility may, in theory, be a basis for an excuse" in bringing a vehicle for repair during the warranty period. *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014). Plaintiff, however, provides no cases demonstrating that any court applied the futility exception to presentation during the express warranty period. *See id.* (refusing to apply exception because "Plaintiffs have cited no cases establishing a futility exception to the presentation required by the express terms of the express warranty). Without such authority, this Court also declines to apply a futility exception to Plaintiff's express warranty claims.

Finally, Plaintiff maintains that the durational period of the express warranties is unconscionable given Defendants' pre-sale knowledge of the defect. Plf. Opp. at 16-22. A court

10

may refuse to enforce contracts, or discrete contract clauses, that are unconscionable. *Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555, 564 (Cal. Ct. App. 2006). In auto defect cases, a plaintiff may avoid durational warranty limits of an automobile manufacturer's warranty if she properly alleges the warranty is unconscionable. *See Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014). To determine whether a contract is unconscionable, a court evaluates both procedural and substantive unconscionability. Procedural unconscionability "focuses on two factors: oppression and surprise." *Aron*, 49 Cal. Rptr. 3d at 564. The substantive unconscionability element "focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results as to shock the conscience." *Id.* (internal quotations omitted). Finally, courts generally apply "a sliding-scale" to determine overall unconscionability, "[i]n other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and *vice versa*." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Proc.*, 754 F. Supp. 2d 1145, 1181-82 (C.D. Cal. 2010) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 767-68 (Cal. 2000)).

Plaintiff's unconscionability argument stems from her allegation that Defendants knew the turbocharger would fail after the limitations of the express warranties but did not inform consumers. *See, e.g.*, Plf. Opp. at 18, 22. Among other things, Plaintiff maintains that given Defendants' knowledge of the inherent defect, the warranty terms were oppressive and unreasonable because they shift the premature failure costs to purchasers. *Id.* at 18-19. Plaintiff continues that Defendants collectively knew of the defect because of consumer complaints to dealers, warranty and replacement parts data, NHTSA complaints, and testing performed in response to consumer complaints. Compl. ¶¶ 22, 68. Plaintiff does not elaborate on the contents

11

of any complaints to the NHTSA or Defendants' dealerships, whether Plaintiff's turbocharger defect was like these complaints, or if the warranty and replacement parts data aligns with Plaintiff's turbocharger defect.[10] Without such details, Plaintiff's allegations fall short. Accordingly, Plaintiff fails to demonstrate that the warranty was substantively unconscionable.

Plaintiff also fails to sufficiently plead any procedural unconscionability. The precise terms of the warranty do not shock the conscience on their face. Moreover, without sufficient allegations as to knowledge, Plaintiff cannot establish that Defendants manipulated the warranty terms to coincide with necessary turbocharger repairs. Thus, Plaintiff does not plead that the warranties were unconscionable.

In sum, Defendant's motion to dismiss the express warranty claim is granted. Count VI and the express warranty aspect of Count III are dismissed pursuant to Rule 12(b)(6).

### 3. Implied Warranty Claims (Counts III and VII)

Next, Defendant seeks to dismiss both of Plaintiff's implied warranty claims. Plaintiff asserts breach of implied warranty claims under the UCC (Count VII) and the Song-Beverly Act (Count III). In both, Plaintiff alleges that Defendants "impliedly warranted that class vehicles were in merchantable condition and fit for ordinary purpose." *See, e.g.*, Compl. ¶ 175. Plaintiff further asserts that the vehicles were not actually merchantable because of the inherent turbocharger defect. *Id.* ¶ 176.

---

[10] In the Complaint, Plaintiff simply alleges that her vehicle experienced a turbocharger defect. Compl. ¶ 2. But in explaining the alleged turbocharger defect, Plaintiff's allegations suggest that the turbocharger could malfunction in different ways. *See* Compl. ¶¶ 18-19 (pleading that the turbocharger could be "nonfunctional as either overboost or underboost," that there was premature wear, and that the roll pin might "back out"). In her opposition brief, Plaintiff explains that her vehicle experienced a turbocharger "underboost condition" exactly as described in the Tech Tip and service bulletins attached as Exhibits to the Complaint. Plf. Opp. at 35 n.24. Again, Plaintiff may not amend her Complaint through her opposition brief. *See PepsiCo, Inc.*, 836 F.2d at 181.

Turning to the implied warranty aspect of Plaintiff's Song-Beverly claim, "every retail sale of 'consumer goods' in California includes an implied warranty by the manufacturer and the retail seller that the goods are 'merchantable' unless the goods are expressly sold 'as is' or 'with all faults.'" *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 289 (Cal. Ct. App. 2009) (citing Cal. Civ. Code §§ 1791.3, 1792). The Song-Beverly Act further provides that "[t]he duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable." Cal. Civ. Code § 1791.1(c). As discussed, Plaintiff's turbocharger defect manifested after the applicable express warranties expired. Therefore, Plaintiff fails to state an implied warranty claim under the Song-Beverly Act.

As for Plaintiff's UCC implied warranty claim, Defendant maintains that because she only addressed the Song-Beverly Act claim in her opposition brief, the UCC claim should be dismissed as unopposed. Defendant is correct that in her opposition brief, Plaintiff only addresses dismissal of her Song-Beverly implied warranty claim. *See* Plf. Opp. at 25-30. Consequently, Plaintiff appears to waive her opposition as to the UCC implied warranty claim. *See O'Neal v. Middletown Township*, No. 18-5269, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019) ("Plaintiffs fail to present any substantive argument in opposition to Defendants' argument, and therefore, have conceded the point."); *see also Brown v. DiGuglielmo*, 418 F. App'x 99, 102 (3d Cir. 2011) (observing that a case "could be dismissed as unopposed . . . if the party is represented by counsel"); *Hollister v. USPS*, 142 F. App'x 576, 577 (3d Cir. 2005) (noting that if represented party does not submit responsive arguments on a motion to dismiss, the motion may be deemed unopposed and granted without an analysis of the merits).

Plaintiff's UCC implied warranty claim also fails on the merits. With respect to vehicles, the implied warranty of merchantability is a guarantee that they will operate in a "safe condition and substantially free of defects." *Isip v. Mercedes-Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 700 (Cal. Ct. App. 2007); *see also* Ca. Com. Code § 2314. Under the UCC, an implied warranty of merchantability and fitness can be modified by a conspicuous writing. Ca. Com. Code § 2316(2). Here, the NVLW expressly states that "[a]ny implied warranty, including any warranty of merchantability or warranty of fitness for a particular purpose, is limited in duration to the stated period of these written warranties." Pritzl Decl., Ex. A at 9. Consequently, Plaintiff's UCC implied warranty claim is also subject to the same warranty limitations as the Song-Beverly claim. Because Plaintiff's turbocharger defect did not manifest within the express warranty timeframes, Count VII also fails.

Accordingly, Plaintiff's implied warranty claims are dismissed for failure to state a claim.

### 4. Negligent Misrepresentation (Count V)

Finally, Defendant argues that Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine. Def. Br. at 35-36. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004); *see also Cho v. Hyundai Motor Co., Ltd.*, --- F. Supp. 3d ---, 2022 WL 16966537, at *3 (C.D. Cal. Oct. 21, 2022) ("The economic loss rule precludes recovery in tort where a plaintiff's damages consist solely of economic loss."). There is, however, an exception to the rule when a contract was induced by an affirmative fraudulent misrepresentation. *See Robinson Helicopter Co., Inc.*, 102 P.3d at 273. Defendant maintains that exception only applies to affirmative misrepresentations. Defendant continues that because

Plaintiff's negligent misrepresentation claim is based on Defendants' failure to disclose the turbocharger defect, the exception does not apply. Def. Br. at 35-36. But courts in California appear split as to whether the economic loss rule bars fraudulent omission claims. *Compare Flier v. FCA US LLC*, No. 21-2553, 2022 WL 16823042, at *6 (N.D. Cal. Nov. 8, 2022) (finding reasoning from recent decision from California Court of Appeal "that the economic loss rule does not bar fraudulent omission claims" persuasive), *with Cho*, 2022 WL 16966537, at *5 ("Accordingly, because Plaintiffs only seek economic damages and concede that their fraud claims are based only on omissions and concealment, the Court finds those claims are barred by the economic loss rule under California law."). Given this split, the Court will not dismiss Plaintiff's negligent misrepresentation claim as barred by the economic loss doctrine at this time.

Defendant also argues that Plaintiff's negligent misrepresentation claim is time-barred.[11] Def. Br. at 9. The statute of limitations for a negligent misrepresentation claim is three years, running from the date of a plaintiff's discovery. Ca. Civ. Proc. Code § 338; *see also Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015) (stating that a negligent misrepresentation claim "accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action") (internal citation omitted). As discussed, Plaintiff's alleged turbocharger defect manifested on or around July 2019. Compl. ¶ 2. Plaintiff filed her Complaint on June 21, 2022. D.E. 1. Therefore, Plaintiff's negligent misrepresentation claim is not time-barred.

Defendant counters that the statute of limitations accrued when Plaintiff first leased the car. Def. Br. at 9. Defendant relies on *Finney v. Ford Motor Company*, No. 17-6138, 2019 WL 79033

---

[11] The statute of limitations is an affirmative defense not normally decided on a motion to dismiss. However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *See Crump v. Passaic County*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015).

(N.D. Cal. Jan. 2, 2019).  In *Finney*, however, the plaintiff's vehicle had several defect related repairs between 2007 and 2011.  The Court rejected the plaintiff's argument that despite these repairs, she could not have discovered the defect until a third-party repair in 2015. *Finney*, 2019 WL 79033, at *3 (explaining that the plaintiff's amended complaint "still fails to plausibly allege why she was unable to have discovered her engine problems earlier").  Accordingly, *Finney* is distinguishable.  Here, the alleged defect did not manifest until 2019 and the Complaint is devoid of facts demonstrating that Plaintiff should have known of the defect earlier.

Next, Defendant contends that all of Plaintiff's claims, including the negligent misrepresentation claim, must be dismissed because of impermissible group pleading.  Def. Br. at 6-7.  "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants."  *Shaw v. Hous. Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012).  Mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss.  *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015).  A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.*  A claim that contains "impermissibly vague group pleading" will be dismissed. *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

Plaintiff maintains that the Complaint "carefully distinguishes between the various Defendants."  Plf. Opp. at 7-8.  Plaintiff further argues that her common allegations as to Volkswagen and Audi are appropriate "because these entities are joined through the same corporate structure and act as agents and/or alter egos of each other." *Id.* at 8.  The Court disagrees.  Plaintiff fails to satisfy the basic pleading requirement of providing adequate notice to each co-

16

Defendant of the specific claims against it. As discussed, Plaintiff asserts claims collectively against Defendants and fails to specify the actual involvement of any Defendant individually.

Moreover, Plaintiff alleges, in a conclusory fashion, that VWGoA and Audi America acted as agents and/or alter egos of VWAG and Audi AG. Compl. ¶ 7. The Complaint, however, does not include allegations that plausibly support Plaintiff's agency or alter ego allegation. And again, while Plaintiff includes additional information in her opposition brief, Plf. Opp. at 8 n.8, Plaintiff cannot amend her pleading through her brief. Accordingly, the negligent misrepresentation claim is dismissed on these grounds.[12] *See D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020) (dismissing claims for impermissible group pleading because "Plaintiffs' Complaint broadly alleges Defendants' misconduct but fails to allege the conduct for which each defendant is culpable").

### IV.  CONCLUSION

Therefore, for the foregoing reasons, and for good cause shown,

IT IS on this 2nd day of March, 2023,

**ORDERED** that Defendant's motion to dismiss (D.E. 20) is **GRANTED** and the Complaint is dismissed without prejudice; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff does not file an amended pleading within that time, the Complaint will be dismissed with prejudice.

John Michael Vazquez, U.S.D.J.

---

[12] Although the Court dismisses Plaintiff's other claims on the merits, those claims also contain impermissible group pleading.