<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JULIE KIMBALL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., et al.,<br><br>Defendants. | Civil Action No. 22-4163<br><br>**OPINION**<br><br>September 3, 2024 |

**SEMPER**, District Judge.

Currently before the Court is Defendant Volkswagen Group of America, Inc.'s ("Defendant" or "VWGoA") motion to dismiss Plaintiff Julie Kimball's ("Plaintiff") Second Amended Complaint (ECF 51, "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 60-1, "Def. Br.") Plaintiff filed a brief in opposition. (ECF 67, "Opp.") Defendant filed a reply. (ECF 73, "Reply.") The Court reviewed the Second Amended Complaint and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part.**

**I.   FACTUAL AND PROCEDURAL BACKGROUND**[1]

This putative class action lawsuit arises from an alleged engine defect present in certain Audi and Volkswagen (VW) vehicles. In 2009, Plaintiff, who is a citizen of California, leased a

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

2010 Audi A4 from an authorized Audi dealership. (SAC ¶ 2.) At the end of the lease, Plaintiff bought the car. (*Id.*) In 2019, with more than 63,000 miles on the vehicle, Plaintiff's vehicle "experienced the turbocharger defect." (*Id.*) Plaintiff alleges she was forced to pay approximately $3,100 for diagnosis and replacement of the turbocharger. (*Id.*)

For purposes of the instant motion, the Court does not retrace this case's full factual and procedural history. This Court's March 2, 2023 opinion granting Defendant's motion to dismiss the Complaint includes a detailed recounting of the factual background of this matter. (*See* ECF 29.) To the extent relevant to the instant motion, the Court incorporates the factual and procedural histories from both the March 2, 2023 opinion on the motion to dismiss Plaintiff's Complaint (ECF 29) and the August 28, 2023 opinion on the motion to dismiss Plaintiff's First Amended Complaint ("FAC"). (ECF 45.)

In her Second Amended Complaint, Plaintiff asserts five counts on behalf of herself and the California class: Count I: violation of the Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code § 1750 *et seq.* (SAC ¶¶ 141-59); Count II: violation of unfair competition law (the "UCL"), Cal Bus. & Prof. Code § 17200 *et seq.*: (*id.* ¶¶ 160-76); Count III: fraudulent omission or concealment (*id.* ¶¶ 177-86); Count IV: negligent misrepresentation (*id.* ¶¶ 187-94); and Count V: breach of express warranty (*id.* ¶¶ 195-222).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss for lack of standing "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406,

2

1409 (3d Cir. 1991). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). "[A] factual challenge[] attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

Motions to dismiss for lack of standing are best understood as facial attacks. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("Defendants' Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the [a]mended [c]omplaints lack sufficient factual allegations to establish standing."). In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts must apply the familiar 12(b)(6) standard. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim[.]").

3

B.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

C.     Rule 9(b)

"When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." *Franchitti v. Cognizant*

4

*Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 68 (D.N.J. 2021) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue.'" *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). This standard has been relaxed slightly for fraudulent omission claims where pleading specific times and places may not be practicable and, instead, Rule 9(b) may be satisfied by "alleg[ing] what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264 (D.N.J. 2011) (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)).

### III. ANALYSIS

#### 1. Standing to Seek Injunctive and Equitable Relief

Through her CLRA and UCL claims (Counts I and II), Plaintiff seeks injunctive and equitable relief. (SAC ¶¶ 141-76.) Defendant argues Plaintiff lacks standing to seek such relief. (Def. Br. at 25-28.)

Article III standing requires a plaintiff to show: (1) that she suffered a concrete, particularized, injury in fact that is actual or imminent; (2) that the defendant caused the injury; and (3) the injury would likely be redressed by the requested judicial relief. *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct.

5

1615, 1618 (2020)). "Standing requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press'" and is not satisfied for one claim merely because it is related to another for which standing has been satisfied. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

### A. Injunctive Relief

Along with the injury, causation, and redressability requirements outlined above, standing to seek injunctive relief also requires a plaintiff to demonstrate that she is likely to suffer a "sufficiently real and immediate" threat of future injury. *Rieger v. Volkswagen Gp. of Am., Inc.*, No. 21-10546, 2023 U.S. Dist. LEXIS 78785, at *16 (D.N.J. May 4, 2023) (citing *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990))). In response to Defendant's arguments that she lacks standing to seek injunctive relief, Plaintiff relies on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 961 (9th Cir. 2018). She asserts that *Davidson* establishes that she need not allege "a sufficient possibility that she will be harmed again in the future." (Opp. at 29.) However, Courts in this District have declined to adopt *Davidson's* reasoning. *See, e.g.*, *Rieger*, 2023 U.S. Dist. LEXIS 78785, at *18 (declining to adopt the reasoning in *Davidson*); *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 20-03095, 2021 U.S. Dist. LEXIS 62373, at *91 (D.N.J. Mar. 31, 2021) (finding that "the Third Circuit and other courts have squarely rejected *Davidson's* reasoning and conclusion, finding the threat of injury that repeat customers 'might suffer as a result of the company's advertising practices [to be] "wholly conjectural."'" (alteration in original) (quoting *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018))).

Indeed, to find that Plaintiff has standing to seek injunctive relief, the Court would have to assume that Plaintiff is at a real and immediate risk of purchasing new class vehicles from Defendant despite the lengths at which she has alleged Defendant's fraudulent and deceptive practices. As other Courts within this District have explained, such a "request for injunctive relief therefore 'amounts to a "'stop me before I buy again' claim" that precludes Article III standing." *Rieger*, 2023 U.S. Dist. LEXIS 78785, at *17 (citing *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) (quoting *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d at 292-93)). Accordingly, Plaintiff's requests for injunctive relief are dismissed without prejudice.

### B. Equitable Relief

Defendant also argues that Plaintiff cannot seek equitable relief because she has failed to allege and establish that there is no adequate alternative remedy at law. (Def. Br. at 25-26.) Through her CLRA and UCL claims, Plaintiff seeks equitable relief, including restitution. (SAC ¶ 176.) However, she does not allege that she lacks an adequate remedy at law. A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (ellipsis in original) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))).[2] Accordingly, a "[p]laintiff must adequately allege the inadequacy of a remedy at law prior to proceeding at the motion to dismiss stage." *Rodriguez v. FCA US LLC*, No. 22-01445,

---

[2] *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992) (holding that when "remedies are equitable in nature . . . it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief"); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.").

2023 U.S. Dist. LEXIS 48041, at *9 (C.D. Cal. Mar. 21, 2023); *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (dismissing UCL claim for lack of equitable jurisdiction at pleadings stage); *Price v. Wells Fargo & Co.*, 2022 U.S. Dist. LEXIS 220024, at *4 (N.D. Cal. Dec. 6, 2022) (same). Therefore, Plaintiff's UCL claim (Count II), which only seeks equitable relief, is dismissed without prejudice. To the extent Plaintiff seeks equitable relief through her CLRA claim, her equitable CLRA claim is dismissed without prejudice. *See Guzman v. Polaris Indus.*, 49 F.4th 1308, 1312 (9th Cir. 2022) ("under th[e] federal inadequate-remedy-at-law principle, if the plaintiffs had an adequate legal remedy under the CLRA, they could not also maintain equitable claims under the UCL and CLRA in federal court.").

### 2. Fraud Claims (Counts I and III)

In Count I, Plaintiff alleges a violation of the CLRA, Cal Civ. Code § 1750 *et seq.* and seeks a legal remedy. (SAC ¶¶ 141-59.) In Count III, Plaintiff alleges fraudulent omission or fraudulent concealment. (*Id.* ¶¶ 177-86.) Defendant seeks to dismiss all fraud-based claims.

#### A. Affirmative Misrepresentation

In its prior decisions on the first and second motions to dismiss, this Court found that Plaintiff's Complaint and FAC both failed to plead affirmative misrepresentations, such that Plaintiff failed to state any fraud-based claims based on affirmative representations. (ECF 29 at 6-7; ECF 45 at 5-6.) Defendant argues that Plaintiff's SAC still fails to do so. (Def. Br. at 6-9.)

"[W]hen it comes to affirmative misrepresentations—the complaint must allege the 'who, what, when, where, and how of the misconduct charged' and explain 'what is false or misleading about a statement, and why it is false.'" *Epperson v. Gen. Motors, LLC*, No. 23-1554, -- F. Supp. 3d --, 2023 WL 8628327, at *2 (S.D. Cal. Dec. 13, 2023) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). In her SAC, Plaintiff states that Defendant's "representations

8

in the USA Warranty and Maintenance schedules for the class vehicle engine components and service life of the turbocharger" and "Class vehicle Owner's Manuals" did not require turbocharger inspection or maintenance within the first 115,000 to 125,000 miles of vehicle operation. (SAC ¶ 42.) The maintenance schedules omit the engine turbocharger entirely. (*Id.*) Plaintiff asserts that "[t]he reasonable inference is that this expensive major engine component would not have to be replaced during the reasonably expected life of the class vehicle." (*Id.*) However, Plaintiff's "reasonable inference" that an "engine component" need not be replaced does not constitute an affirmative misrepresentation by Defendant. *See, e.g.*, *Lorenzo Ford v. Hyundai Motor Am.*, No. 20-00890, 2021 U.S. Dist. LEXIS 249881, at *61 (C.D. Cal. Oct. 5, 2021) (explaining that when a product manufacturer makes claims about a product's quality or reliability, a claim against the product manufacturer based on affirmative misrepresentation may be viable); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-01298, 2021 WL 62502, at *5 (C.D. Cal. Jan. 4, 2021) ("Plaintiffs have still failed to even plausibly allege that Mazda made any representation that the water pumps should last 120,000 miles merely by omitting them from the maintenance schedules.").

Plaintiff further asserts that her "reasonable inference" was "buttressed by sales agents of Sonnen Motorcars at the point of purchase who specifically stated to Kimball that her vehicle was engineered with German technical prowess and that she could expect the vehicle to travel in excess of 150,000 miles without experiencing any major engine repairs." (SAC ¶ 42.) Plaintiff does not elaborate on the identity of these sales agents or sufficiently allege that Sonnen Motorcars or its sales agents were Defendant's agents such that statements made by them could be imputed on Defendant. Indeed, "[a]n agency relationship 'arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Aldini*

9

*AG v. Silvaco, Inc.*, No. 21-6423, 2023 U.S. Dist. LEXIS 98686, at *25 (N.D. Cal. Mar. 27, 2023) (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting RESTATEMENT (THIRD) OF AGENCY § 1.01 (Am. L. Inst. 2006))). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" *Aldini AG*, 2023 U.S. Dist. LEXIS 98686, at *25 (quoting *Mavrix Photographs, LLC*, 873 F.3d at 1054 (quoting RESTATEMENT (THIRD) OF AGENCY § 1.01)).[3] Plaintiff fails to specifically plead with sufficient detail the nature of this alleged affirmative misrepresentation or why this statement should be attributed to Defendant. Accordingly, Plaintiff fails to plead any fraud-based claims based on affirmative misrepresentations.

### B. Omission Based Claims

In a failure to disclose a defect claim under the CLRA, a plaintiff must allege "'(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; and (3) a causal connection between the alleged defect and the alleged safety hazard; and that the manufacturer knew of the defect at the time a sale was made.'" *Azoulai v. BMW of N. Am. LLC*, No. 16-589, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (quoting *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017)). A plaintiff must also plead knowledge of the defect at the time of sale to establish a common-law fraudulent concealment claim. *See Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1092 (S.D. Cal. 2016) ("A defendant may be obliged to disclose a fact when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff or when the defendant actively conceals a material fact from the plaintiff." (internal quotation omitted)).

---

[3] This Court applied California law in both of its prior opinions in this case. (*See* ECF 29 at 6 n.7; ECF 45 at 5 n. 6.) The Court continues to do so here.

### i. Pre-sale Knowledge

Defendant argues that Plaintiff's omission-based fraud claims still fail because Plaintiff does not plead pre-sale knowledge. (Def. Br. at 9-11.) For each of her omission-based fraud claims, Plaintiff must sufficiently plead that Defendant had pre-sale knowledge of the defect. *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1092 (S.D. Cal. 2016) (addressing common law fraudulent concealment claim); *Azoulai v. BMW of N. Am. LLC*, No. 16-589, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (quoting *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017)) (addressing CLRA and UCL claims).

In the SAC, Plaintiff alleges Defendant had pre-sale knowledge through consumer complaints (SAC ¶¶ 32, 59), technical bulletins, service bulletins, and tech tips (*id.* ¶ 34), and pre-production testing and post-production monitoring. (*Id.* ¶¶ 21-31.) The Court addresses each alleged basis for knowledge in turn.

Plaintiff alleges that Defendant had pre-sale knowledge based on consumer complaints. (SAC ¶ 32.) She asserts that "[s]ince the majority of complaints are made directly to VWGoA and Audi America's authorized dealerships, it is reasonable to infer VWGoA and Audi America received, either directly from customers or through their exclusive network of dealers, several times the number of complaints identified here." (*Id.* ¶ 59.) However, Plaintiff does not identify any specific complaints or their contents. This plain assertion is not enough to establish pre-sale knowledge.

Plaintiff asserts that technical bulletins, service bulletins, and tech tips establish that Defendant knew of the turbocharger defect prior to her purchase. This Court previously explained that in the FAC, "[a]s pled, Defendants knew of a rattle but not the defect prior to Plaintiff's sale." (ECF 45 at 6.) The amendments to these allegations in the SAC do not plausibly establish that,

11

through the technical bulletins, service bulletins, and tech tips, Defendant knew of the defect prior to the sale of Plaintiff's vehicle. Accordingly, the technical bulletins, service bulletins, and tech tips do not establish pre-sale knowledge.

Furthermore, Plaintiff alleges Defendant had pre-sale knowledge through pre-production testing and post-production monitoring. (SAC ¶¶ 21-31.) Plaintiff asserts the testing was designed to reveal the alleged turbocharger defect, that such defect was revealed, and discovery will confirm the defect and/or its causes. (*Id.* ¶¶ 27-28.) These allegations establish pre-sale knowledge. *Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-14464, 2023 WL 4845873, at *6 (D.N.J. July 28, 2023) ("Plaintiffs allege that Defendants completed certain tests designed to expose defects like the Turbocharger Defect, that such defect was in fact exposed, and that 'discovery is expected to confirm' that the testing results showed 'material stress, fissures, cracks and breaks and/or outright failure of the Turbocharger.' . . . The allegations that Defendants conducted testing which was designed to show, and did in fact show, that the turbocharger was defective creates a reasonable inference that Defendants knew of the Turbocharger Defect pre-sale.").

### ii. Duty to Disclose

Omission of a material fact can be actionable if the defendant has a duty to disclose. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013). Such a duty arises in four situations: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact." *Id.*

Plaintiff alleges that, pursuant to the second scenario, "[k]nowledge and information concerning the turbocharger defect was in the exclusive possession of VWGoA and Audi America

12

and their dealers, who possessed superior knowledge and was not provided to Kimball and class vehicle owners, who could not reasonably discover the turbocharger defect through due diligence." (SAC ¶ 51.) Plaintiff also alleges that, pursuant to the third theory, "[a]lthough VWAG, Audi AG, VWGoA and Audi America knew the turbocharger defect in class engines caused premature failure of the turbocharger, they knowingly and actively concealed material information from prospective and actual purchasers with the intent to deceive purchasers and promote class vehicle sales." (*Id.* ¶ 80.)

To assert a claim under either theory, Plaintiff must establish a material fact. "[A] fact can give rise to a duty to disclose and an actionable omission if it implicates safety concerns that a reasonable consumer would find material." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013). Plaintiff alleges that "[w]hen the turbocharger defect occurs, the vehicle has the propensity to, without notice, lose engine power unexpectedly, and experience an immediate loss of speed or ability to accelerate and/or maintain speed; placing the vehicle at risk for a rear end collision or loss of control." (SAC ¶ 147.) In the instant matter, the Court finds that Plaintiff adequately pleads that the alleged defect posed a genuine safety risk because the driver could lose engine power and control of the car, putting the driver in danger. A reasonable consumer would consider this risk material because of the inherent risks of physical injury. *Mui Ho*, 931 F. Supp. 2d at 997.

As described above, Plaintiff first alleges Defendant had a duty to disclose facts about the turbocharger defect because it had exclusive knowledge of those facts, which it gained in part through the testing detailed *supra*. (SAC ¶ 51.) The Court finds that Plaintiff sufficiently alleges that pre-production testing and post-production monitoring provided Defendant with exclusive

13

knowledge of the turbocharger issue, such that a failure to disclose it would be actionable. Accordingly, Plaintiff asserts a CLRA claim pursuant to this theory.

Plaintiff also asserts that Defendant actively concealed a material fact. To state a claim for active concealment, a plaintiff must plead the following five elements:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Mui Ho*, 931 F. Supp. 2d at 998 (quoting *Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 157 (Cal. Ct. App. 2004). These are essentially the same elements of a fraud by omission claim. *Mui Ho*, 931 F. Supp. 2d at 998. As stated above, Plaintiff adequately pleads that the turbocharger problem was material, and Defendant had a duty to disclose it. However, Plaintiff has not sufficiently alleged facts evidencing that Defendant intended to conceal with an intent to defraud. Accordingly, she does not assert a CLRA omission-based claim on this theory. Furthermore, her fraudulent omission claim fails. Accordingly, Count I survives only on the exclusive knowledge theory, and Count III is dismissed without prejudice.

### 3.  Negligent Misrepresentation

Defendant asserts Plaintiff's negligent misrepresentation claim must be dismissed because Plaintiff fails to plead an affirmative misrepresentation. (Def. Br. at 16.) To successfully plead a negligent misrepresentation claim, a plaintiff must allege: (1) a misrepresentation of a past or existing material fact; (2) made without reasonable grounds for believing it to be true; (3) made with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Augustine v. Talking Rain Bev. Co.*, 386 F. Supp.

14

3d 1317, 1330-31 (S.D. Cal. 2019) "Under California law, '[a] negligent misrepresentation claim requires a positive assertion, not merely an omission.'" *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) (citing *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596, (Cal. Ct. App. 2011)). As stated above, Plaintiff does not establish an affirmative misrepresentation. Accordingly, Plaintiff's negligent misrepresentation claim (Count IV) is dismissed without prejudice.

### 4. Express Warranty

Defendant moves to dismiss Plaintiff's express warranty claim because Plaintiff's SAC fails to cure the deficiencies present in the original Complaint and the FAC. (Def. Br. at 21-25.) As discussed in both prior opinions in this case, "[t]he general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Cal. Ct. App. 2006)). This is also true for a latent defect that did not manifest during the useful life of a product. *Daugherty*, 51 Cal. Rptr. 3d at 122-23; *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 534 (C.D. Cal. 2012) ("Thus, under California law, a defect that remains 'latent' during the useful life of the product and does not manifest in an actual malfunction will not support a cause of action for breach of express warranty."). Two warranties are at issue here: (1) a New Vehicle Limited Warranty ("NVLW") that includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first" which covers "all internal [engine] parts" including the turbocharger. (SAC ¶ 199.) Plaintiff discovered the alleged turbocharger defect at 63,683 miles, approximately seven

15

years after she purchased the vehicle. (*Id.* ¶ 2.) Accordingly, Plaintiff's alleged defect occurred outside any applicable express warranty period.

In arguing that she states an express warranty claim, Plaintiff raises several arguments that this Court previously rejected. She argues again that her express warranty claim is sufficiently pled by relying on a line of cases involving latent defects that are substantially certain to manifest. She once again relies on *Hicks v. Kaufman & Broad Home Corp.*—an opinion concerning a motion for class certification—in which the California Court of Appeal explained that "proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." *Hicks*, 107 Cal. Rptr. 2d 761, 768 (Cal. Ct. App. 2001). Plaintiff asserts that she needs to plead "a substantial certainty of premature failure, not . . . an actual malfunction during the warranty period." *Hewlett-Packard Co. v. Super. Ct.*, 83 Cal. Rptr. 3d 836, 842 (Cal. Ct. App. 2008). As this Court previously explained, *Hicks* involved a product used to build foundations for homes, and the *Hicks* court acknowledged that "[f]oundations . . . are not like cars or tires. Cars and tires have a limited useful life." *Hicks*, 107 Cal. Rptr. 2d at 772. Accordingly, many courts refuse to extend *Hicks* to automobile defect cases. *See, e.g.*, *Dakin v. BMW of N.A., LLC*, No. 19-818, 2019 WL 5788324, at *4 (S.D. Cal. Nov. 6, 2019); *Resnick v. Hyundai Motor Am., Inc.*, No. 16-593, 2017 WL 1531192, at *8 (C.D. Cal. 2017) ("However, 'it is unclear whether *Hicks* applies to consumer products with limited lifespans . . . indeed multiple district courts have concluded that it does not.'" (quoting *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 851 (N.D. Cal. 2012))). Even if *Hicks* applied here, Plaintiff still fails to provide non-conclusory allegations that establish substantial certainty.

16

Next, Plaintiff again relies on the futility exception. As stated in this Court's opinion on the motion to dismiss the FAC, courts have applied the futility exception when "there is a defect common to all class vehicles; that [the defendant manufacturer] was consistently unable to fix the defect; and that any repairs or mitigation that [the defendant] offered were insufficient." *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (citing *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 289 (E.D. Mich. 2021)); *Benkle v. Ford Motor Co.*, No. 16-1569, 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017) (applying futility exception where the defendant "failed to provide adequate repairs for Plaintiffs that did present their vehicles for repairs"). Plaintiff does not plausibly allege that the replacement or repair of her turbocharger was futile such that the futility exception applies here.

Furthermore, Plaintiff argues that the warranty was unconscionable.[4] Nevertheless, for the same reasons stated in this Court's prior opinions, she still fails to plausibly plead procedural and substantive unconscionability.

Accordingly, Plaintiff's express warranty claim (Count V) is again dismissed without prejudice.

---

[4] A court may refuse to enforce contracts, or discrete contract clauses, that are unconscionable. *Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555, 564 (Cal. Ct. App. 2006). In auto defect cases, a plaintiff may avoid durational warranty limits of an automobile manufacturer's warranty if she properly alleges the warranty is unconscionable. *See Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014). To determine whether a contract is unconscionable, a court evaluates both procedural and substantive unconscionability. Procedural unconscionability "focuses on two factors: oppression and surprise." *Aron*, 49 Cal. Rptr. 3d at 564. The substantive unconscionability element "focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results as to shock the conscience." *Id.* (internal quotations omitted). Finally, courts generally apply "a sliding-scale: to determine overall unconscionability, "[i]n other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and *vice versa*." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Proc.*, 754 F. Supp. 2d 1145, 1181-82 (C.D. Cal. 2010) (quoting *Armendariz v. Foundation Health Psychcare Servs.*, 6 P.3d 669, 767-68 (Cal. 2000)).

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part.** An appropriate order accompanies this opinion.

/s/ *Jamel K. Semper*        .
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:       Michael A. Hammer, U.S.M.J.
           Parties